

FILED

DEC 14 2009

Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### IN THE NORTHERN DIVISION AT KNOXVILLE

| | | |
|---|---|---|
| **TENNESSEE CLEAN WATER NETWORK,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | No. 3:09-CV-557 |
| | ) | Phillips/Guyton |
| **DAVID TRANTANELLA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff Tennessee Clean Water Network, by and through counsel, alleges as follows:

### NATURE OF THE CASE

1.     This is a citizen suit, brought pursuant to Section 505(a)(1) of the federal Clean Water Act (hereinafter "the Act"), as amended, 33 U.S.C. § 1365(a)(1), to address stormwater pollution discharged from a construction site known as the Casa Bella Subdivision ("Casa Bella") into Murphy Creek in Knox County, Tennessee. Defendant David Trantanella and his unincorporated construction contractor, Trantanella Construction, have repeatedly violated the terms of the Act and of the National Pollutant Discharge Elimination System (hereinafter "NPDES") permit for the Casa Bella Subdivision issued pursuant to 33 U.S.C. § 1342. Defendant has failed to take the necessary and legally required steps to prevent the dislodging and suspension of sediment in the stormwater discharged from the Casa Bella Subdivision to Murphy Creek and its tributaries. Plaintiff seeks a declaratory judgment, injunctive relief, the

Case 3:09-cv-00557   Document 1   Filed 12/14/09   Page 1 of 24

imposition of civil penalties, and the award of costs, including attorney and expert witness fees, for Defendant's repeated and continuing violations of the Act.

## JURISDICTION

2. This Court has subject matter jurisdiction under Section 505(a) of the Act, 33 U.S.C. § 1365(a), and 28 U.S.C. § 1331.

3. Plaintiff has complied with the pre-suit notice requirements of the Act, 33 U.S.C. § 1365(b)(1)(A). On October 2, 2009, Plaintiff mailed a notice of intent to file suit to address the violations at the Casa Bella Subdivision to Defendant, the Administrator of the U.S. Environmental Protection Agency (hereinafter "EPA"), and the Regional Administrator of the EPA, the Director of the Tennessee Department of Environment and Conservation Division of Water Pollution Control (hereinafter "TDEC"). (The notice is attached as Exhibit 1 and incorporated by reference herein.) This notice complied with 33 U.S.C. § 1365(b)(1)(A) and with 40 C.F.R. Part 135, Subpart A. More than 60 days have passed since the notice was served on Defendant and these agencies.

4. EPA has not commenced and is not diligently prosecuting a civil or criminal action in a court of the United States or a State to redress the violations of the Act by Defendant. In addition, TDEC has not commenced and is not diligently prosecuting a civil or criminal action in a court of the United States or a State to redress the violations of the Act by Defendant.

5. Neither EPA nor TDEC had commenced and diligently prosecuted an administrative penalty action under Section 309(g) of the Act, 33 U.S.C. § 1319(g), or under a comparable Tennessee law, to redress violations by Defendant prior to the service of Plaintiff's

- 2 -

notice letter. This suit has been commenced within 120 days of the service of Plaintiff's 60-day notice.

6.     Plaintiff will, immediately upon receipt of a file stamped copy of this Complaint, mail a copy of this to the Administrator of the EPA, the Regional Administrator of EPA Region 4, and to the Attorney General of the United States.

7.     Venue is appropriate in the Eastern District of Tennessee, pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this District.

## PARTIES

8.     The Tennessee Clean Water Network ("TCWN") is an nonprofit corporation organized under the laws of the State of Tennessee with its principal office in Knoxville, Tennessee. TCWN was organized, among other reasons: to advocate for strong policies and programs that result in more effective protection and restoration of Tennessee waters; to educate organizations, decision-makers, and the public about important water resource issues; and to ensure the protection and restoration of Tennessee's waters. TCWN is a membership organization. TCWN has members who own property and reside on or near Murphy Creek in Knox County, Tennessee, downstream from Defendant's construction site. Members of TCWN also use Murphy Creek, and their tributaries for recreation and livestock watering. Members of TCWN have been and will be directly and substantially injured in their use and enjoyment of property and in their recreational and aesthetic enjoyment of Murphy Creek and downstream waters as a direct result of Defendant's violations of the Act. The relief sought in this case would provide redress for these injuries.

9.     Plaintiff TCWN is a "citizen" within the meaning of 33 U.S.C. § 1365(a).

- 3 -

10. David Trantanella, a natural person, is the owner of all but two of the remaining uncompleted lots in the Casa Bella Subdivision. Mr. Trantanella also operates as Trantanella Construction, an unincorporated entity. Mr. Trantanella and Trantanella Construction are the named permittees on the Notice of Coverage issued by TDEC for the Casa Bella Subdivision.

11. Defendant David Trantanella is a "person" within the meaning of 33 U.S.C. §§ 1362(5) and 1365(a)(1).

## STATUTORY BACKGROUND

12. Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a point source into waters of the United States except in compliance with various enumerated sections of the Act. Among other things, Section 301(a) prohibits such discharges that are not authorized by, or that are in violation of, a National Pollutant Discharge Elimination System ("NPDES") Permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

13. Stormwater discharges resulting from construction activities including clearing, grading, filling, and excavating that result in the disturbance of one acre or more of total land area are unlawful except when covered by, and in compliance with, a NPDES permit. 40 C.F.R. § 122.26(c).

14. The State of Tennessee has been delegated the authority to implement the permitting programs of the Act by EPA, including the NPDES permit program, pursuant to 33 U.S.C. § 1342(b). TDEC is the water pollution control agency for purposes of the Act, and has drafted regulations pursuant to that authority implementing the Act's permitting programs within the State of Tennessee. *See* Tenn. Code Ann. § 69-3-105(h)(1).

15. The Tennessee General NPDES Permit For Discharges of Storm Water Associated with Construction Activities ("TNCGP"), permit No. TNR100000, is issued by TDEC for construction activities that result in the disturbance of one acre or more of total land area. Coverage under this permit requires, among other conditions, submission of a stormwater pollution prevention plan ("SWPPP"). Once a site obtains permit coverage, the TNCGP requires, among other things, that the SWPPP meet certain minimum standards and be updated as needed, that the SWPPP be fully implemented as written, that the SWPPP be updated as required, that the permittee conduct adequate inspections, and that the stormwater discharges do not cause or contribute to water quality violations in the receiving stream. In addition, Knox County enforces its own stormwater ordinance independently from the NPDES permitting and compliance requirements imposed by the Act.

16. A violation of an NPDES permit issued by TDEC is a violation of the Tennessee Water Quality Control Act of 1977, Tenn. Code Ann. §§ 69-3-101, *et seq.*, TDEC rules, including Chapter 1200-4-5, and the federal Clean Water Act.

17. A citizen suit, pursuant to 33 U.S.C. § 1365(a)(1), may be brought for violations of the terms of NPDES permits. 33 U.S.C. § 1365(f).

18. Under 33 U.S.C. § 1365(g), "citizen" means "a person or persons having an interest which is or may be adversely affected." "Person," pursuant to 33 U.S.C. § 1362(5), includes "an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body."

- 5 -

## JURISDICTIONAL FACTS

19. On December 12, 2003 Defendant submitted a Notice of Intent ("NOI") with a SWPPP dated December 10, 2003 that was prepared by Batson, Himes, Norvell & Poe, to TDEC in order to obtain coverage under the TNCGP for stormwater discharges.

20. TDEC issued a Notice of Coverage ("NOC") to David Trantanella and Trantanella Construction effective February 10, 2004 under Tracking No. TNR130675. At that time, the Casa Bella Subdivision was covered by a now-expired version of the TNCGP ("Expired TNCGP"). TDEC issued a revised TNCGP effective statewide on June 17, 2005. The Casa Bella Subdivision automatically became covered by this version of the permit on that date per TNCGP § 2.4.1.

21. Defendant began construction at the Casa Bella Subdivision early in 2004, and cleared nearly the entire site. As of today, approximately 19 lots have been completed and sold to third parties. Mr. Trantanella owns the remaining lots, covering the large majority of the 26-acre site, where there has been little or no construction activity for well over than a year. The lots still owned by Mr. Trantanella were cleared for the purpose of construction, and have not achieved final stabilization.

22. Mr. Trantanella has disturbed more than one acre of land at the Casa Bella Subdivision construction site. At the time construction-related clearing activities began, the entire construction site became a point source under the Act. 40 C.F.R. § 122.26(b)(14)(x).

23. On numerous occasions since construction began, Defendant has discharged stormwater containing sediment from the Casa Bella Subdivision. This sediment is a pollutant within the meaning of the Act, 33 U.S.C. § 1362(6).

24.     Defendant discharges sediment-laden water from the Casa Bella Subdivision to a tributary to Murphy Creek, which is a continuously flowing stream forming geographic features depicted on United States Geological Survey topographical maps. Murphy Creek is a tributary of Whites Creek. Whites Creek is listed pursuant to Section 303(d) of the Act, 33 U.S.C. § 1301(d), for habitat impairment and is subject to the Fort Loudoun Lake Watershed total maximum daily load ("TMDL") for sediment. Whites Creek is a tributary of First Creek. First Creek is 303(d) listed as impaired by siltation and is also subject to the Fort Loudoun Lake TMDL.

25.     The discharge of pollutants into Murphy Creek can significantly affect the chemical, physical, and biological integrity of navigable in fact waters downstream, including First Creek and the Tennessee River, which is part of interstate waters and is widely used for boating.

26.     Murphy Creek, Whites Creek and their tributaries, are "waters of the United States" as that term is used in the Act and as it has been interpreted by the federal courts.

## GENERAL ALLEGATIONS

27.     On June 23, 2004 TCWN member James McMillan first identified the Casa Bella Subdivision as a significant source of sediment in Murphy Creek and notified TDEC of the problem shortly therafter. He found the Casa Bella Subdivision by following the sediment in the stream until he found the source. McMillan noted that although significant areas of the site had been cleared, he observed no erosion prevention and sediment controls ("EPSCs") on site.

28.     TDEC conducted a site inspection on August 4, 2004 and confirmed that no EPSCs had been installed. TDEC issued the first notice of violation ("NOV") without a penalty

- 7 -

to Defendant on August 19, 2004 for failure to install adequate EPSCs, for causing pollution, and for failing to obtain the necessary permit before building a road through waters of the state.

29.     TDEC held a compliance review meeting on August 31, 2004 with Mr. Trantanella and his representatives. TDEC sent a letter to Mr. Trantanella on September 14, 2004 detailing ongoing violations and requesting a revised SWPPP.

30.     TDEC conducted a site inspection on August 17, 2005, finding that "virtually no controls are installed" and "mud is leaving the site via the culvert under the railroad tracks." TDEC issued an NOV without a penalty for these violations, as well as for failing to install the sediment basin per the SWPPP, to Defendant on September 6, 2005.

31.     On September 15, 2005, Mr. Trantanella wrote a letter to TDEC in which he stated: "It is true I have not installed this sediment basin as shown on my SWPPP" and claimed that "no sediment has ever left my construction site."

32.     On January 9, 2006, TDEC issued a Director's Order and Assessment to Mr. Trantanella, dba Trantanella Construction, Case No. 05-063D. This order cited Defendant for undertaking construction without EPSC measures, failing to install the sediment basin, failing to ensure that individual lot owners obtain permit coverage and comply with the TNCGP, causing a condition of pollution, and relocating streams on the property without a permit. The Director's Order imposed a $3,000 penalty for past violations, $1,205.58 in TDEC damages, and stipulated penalties for future violations of the Order. On February 7, 2006, Defendant paid the State of Tennessee $4,205.58 by check number 4036.

33.     Mr. Trantanella responded in writing to the Director's Order on February 8, 2006. In this letter he indicted that the sediment basin had been installed.

34. On September 4, 2006, James McMillan inspected the property, observed that the sediment basin was not working properly, and later complained to TDEC. On September 18, 2006, TDEC inspected the property and found that the "sediment basin outlet structure has had a hole punched in the bottom ... home sites have no controls" and that cleared areas needed to be stabilized within 15 days of construction activity.

35. On November 22, 2006, TDEC conducted another inspection, and found that mud was in the stream below the sediment basin outfall and that temporary stabilization had not been done. On November 29, 2006, TDEC issued a NOV for these violations and ordered Mr. Trantanella to remove mud from the stream and submit an updated SWPPP. On December 4, 2006, TDEC sent a letter to Mr. Trantanella assessing a $1,500 penalty for violating the Director's Order by failing to implement appropriate EPSC measures.

36. On January 5, 2007 and April 18, 2008, TDEC conducted inspections and found that the mud had not been removed from the stream and that the revised SWPPP had not been submitted.

37. On December 17, 2007, Knox County conducted its first inspection, noting that there was "a lot of raw dirt on lots." On January 24, 2008, Knox County conducted an inspection and noted the lack of inlet protection at storm drains and that the lots need ground cover after fifteen days of no activity. On January 28, 2008, Knox County issued an NOV without a penalty for failing to properly install and maintain EPSCs and for failing to stabilize non-vegetated areas within 15 days.

38. Knox County conducted additional inspections from February to June 2008, continuing to identify violations. On June 25, 2008, Knox County issued an NOV without a

- 9 -

penalty for failure to post permits, failure to perform and document EPSC inspections as required, and failure to stabilize non-vegetated areas within 15 days.

39. Knox County conducted additional inspections from July 2008 through February 2009, continuing to identify violations. On March 17, 2009, Knox County issued an NOV without a penalty for failure to stabilize non-vegetated areas within 15 days.

40. Knox County conducted additional inspections from March through May 2009, continuing to identify violations. On May 28, 2009, Knox County issued an NOV without a penalty for failure to stabilize non-vegetated areas within 15 days.

41. On June 12, 2009, Knox County conducted an inspection and met with David Smith of Trantanella Construction to discuss the recent NOVs.

42. On July 27, 2009, Knox County conducted another inspection and found that "nothing has happened yet" to stabilize the non-vegetated lots.

43. On October 2, 2009 Plaintiffs mailed a Notice of Violations (hereinafter the "Notice Letter") to Defendant detailing numerous violations of the Act, of the Tennessee Water Quality Control Act, Tenn. Code Ann. §§ 69-3-101 *et. seq.,* of the regulations promulgated thereunder, and of the TNCGP. This Notice Letter is attached hereto as Exhibit 1, and the notice and the identified violations are incorporated by reference as if fully set forth herein.

44. On October 5, 2009, Knox County conducted an inspection and found that not all inactive areas had been stabilized.

45. On October 7, 2009, TDEC conducted an inspection and found that the site was "basically a moonscape," that the EPSCs were not properly maintained, that there was a hole in the sediment basin discharge structure, that mud has washed into the stream, and that the on-site

- 10 -

stream had not been properly re-constructed. On October 13, 2009, TDEC issued an NOV without a penalty.

46. Sometime in October 2009, Mr. Trantanalla had the site hydroseeded, made some repairs to the sediment basin, installed some additional silt fences, and placed rocks over the storm drain inlets.

47. TDEC conducted inspections on October 20, 2009, October 29, 2009, and November 9, 2009. Knox County conducted inspections on October 30, 2009 and November 4, 2009. These inspections noted the new EPSCs and the hydroseeding.

48. Despite these numerous inspections, NOVs, the Director's Order, and Notice Letter, Defendant continues to violate the terms of the TNCGP. For example, despite Defendant's attempts to hydroseed the bare areas of the Casa Bella Subdivision, much raw dirt remains exposed to the rain. Other EPSC measures have not been properly installed. As a result, at least the following violations of the permit's water quality requirements have occurred after the Notice Letter:

> a. Discharging sediments in amounts detrimental to aquatic organisms on October 14, 2009 (600 NTU), October 15, 2009, October 16, 2009, October 17, 2009, Octobe 19, 2009, November 1, 2009, November 2, 2009 (270 NTU), November 2, 2009 (750 NTU), November 11, 2009, November 12, 2009, and December 2, 2009 (180 NTU); December 3, 2009; December 4, 2009, December 6, 2009; December 9-13, 2009; and
>
> b. Discharging stormwater that causes a condition in which visible solids or turbidity impairs the usefulness of receiving waters for their designated uses on October 14, 2009; October 15, 2009; October 16, 2009; October 17, 2009; October 18,

- 11 -

2009; October 19, 2009; November 11, 2009; November 12, 2009; December 2-13, 2009.

49.     Based on the long history of violations at the site, including violations that have occurred after Plaintiff's Notice Letter, Defendant's NPDES permit violations are ongoing, continuing, intermittent, and likely to recur.

## CLAIMS

## COUNT ONE: FAILURE TO COMPLY WITH THE TERMS OF THE APPLICABLE NPDES PERMIT BY DISCHARGING SEDIMENTS IN CONCENTRATIONS DETRIMENTAL TO HUMANS, LIVESTOCK, WILDLIFE, PLANT LIFE, OR FISH AND AQUATIC ORGANISMS IN VIOLATION OF THE CLEAN WATER ACT

50.     Paragraphs 1-49 of this Complaint are hereby realleged and incorporated by reference herein.

51.     TNCGP § 4.3.2(d) (Expired TNCGP § III.D.2.d) provides that the "storm water discharge must result in no materials in concentrations sufficient to be hazardous or otherwise detrimental to humans, livestock, wildlife, plant life, or fish and aquatic life in the receiving stream."

52.     Defendant has violated TNCGP § 4.3.2(d) (Expired TNCGP § III.D.2.d) and the Act by discharging stormwater from the Casa Bella Subdivision construction site that was sufficiently turbid to be detrimental to livestock, fish, and aquatic life in Murphy Creek and its tributaries on numerous occasions, including, but not limited to, those listed in the Notice Letter served by Plaintiffs and attached hereto as Exhibit 1 and incorporated by reference herein, as well as the occasions identified in Paragraph 48.a. above. Violations of this provision are continuing.

53.     As a result of the acts and omissions of Defendant, Defendant has violated Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, as well as the Tennessee

– 12 –

statutes and rules implementing the Act by repeatedly violating the terms of the TNCGP and of the Expired TNCGP.

## COUNT TWO: FAILURE TO COMPLY WITH THE TERMS OF THE APPLICABLE NPDES PERMIT BY DISCHARGING STORMWATER THAT CAUSES A CONDITION IN WHICH VISIBLE SOLIDS OR TURBIDITY IMPAIRS THE USEFULNESS OF RECEIVING WATERS FOR THEIR DESIGNATED USES IN VIOLATION OF THE CLEAN WATER ACT

54.     Paragraphs 1-53 of this Complaint are hereby realleged and incorporated by reference herein.

55.     TNCGP § 4.3.2(a) (Expired TNCGP § III.D.2.a) prohibits discharges that impair the usefulness of receiving waters for their designated uses as stated in Chapter 1200-4-3-.03 of TDEC's rules. TDEC designates Murphy Creek and Whites Creek for the following uses, among others: fish and aquatic life, livestock watering & wildlife, and irrigation.

56.     Defendant has violated TNCGP § 4.3.2(a) (Expired TNCGP § III.D.2.a) and the Act by discharging stormwater from the Casa Bella Subdivision that causes or contributes to the presence of distinctly visible solids that interfere with livestock watering in Murphy Creek and Whites Creek in violation of Tenn. Comp. R. & Regs. R. 1200-4-3-.03-6(d) (2009) on numerous occasions, including, but not limited to, those listed in the Notice Letter served by Plaintiffs and attached hereto as Exhibit 1 and incorporated by reference herein, as well as the occasions identified in Paragraph 48.b. above. Violations of this provision are continuing.

57.     As a result of the acts and omissions of Defendant, Defendant has violated Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, as well as the Tennessee statutes and rules implementing the Act by repeatedly violating the terms of the TNCGP and of the Expired TNCGP.

## COUNT THREE: FAILURE TO COMPLY WITH THE TERMS OF THE APPLICABLE NPDES PERMIT BY FAILING TO DESIGN EROSION PREVENTION AND

**SEDIMENT CONTROLS TO MINIMIZE THE DISLODGING OF SOIL AND TO RETAIN SEDIMENT ON SITE IN VIOLATION OF THE CLEAN WATER ACT**

58.     Paragraphs 1-57 of this Complaint are hereby realleged and incorporated by reference herein.

59.     TNCGP § 3.5.3.1(a) (Expired TNCGP § IV.D.2.a.i.(a)) provides that the "construction-phase erosion prevention controls shall be designed to retain mobilized sediment on site."

60.     Defendant has violated TNCGP § 3.5.3.1(a) (Expired TNCGP § IV.D.2.a.i.(a)) and the Act by failing to design erosion prevention controls that retain mobilized sediment on site, as evidenced by the discharge of highly turbid stormwater during even routine rain events.

61.     As described in the Notice Letter served by Plaintiffs and attached hereto as Exhibit 1, and incorporated by reference herein, this is a continuous violation beginning October 2, 2004. Violation of this provision is continuing.

62.     As a result of the acts and omissions of Defendants, Defendant has violated Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, as well as the Tennessee statutes and rules implementing the Act by repeatedly violating the terms of the TNCGP and of the Expired TNCGP.

**COUNT FOUR: FAILURE TO COMPLY WITH THE TERMS OF THE APPLICABLE NPDES PERMIT BY FAILING TO IMPLEMENT THE SWPPP AS WRITTEN IN VIOLATION OF THE CLEAN WATER ACT**

63.     Paragraphs 1-62 of this Complaint are hereby realleged and incorporated by reference herein.

64.     TNCGP § 3.1 requires the initial permitted to implement the SWPPP as written from the commencement of construction activity until final stabilization is complete.

– 14 –

65.     Throughout construction, Defendant has not fully implemented the SWPPP as written. Defendant began construction without installing any EPSCs described in the SWPPP, including the detention pond. After installing the detention pond, a hole was knocked out of it in contravention of the SWPPP. Defendant has failed to install and maintain EPSCs, including, but not limited to, silt fences, straw bales, inlet protection, rock check dams, as described in the SWPPP. Defendant has implemented mulch as an erosion control measure, although mulch was not addressed in the SWPPP.

66.     Defendant has violated TNCGP § 3.1 on numerous occasions, including, but not limited to, those listed in the Notice Letter served by Plaintiffs and attached hereto as Exhibit 1, and incorporated by reference herein. Violation of this provision is continuing.

67.     As a result of the acts and omissions of Defendants, Defendant has violated Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, as well as the Tennessee statutes and rules implementing the Act by repeatedly violating the terms of the TNCGP.

## COUNT FIVE: FAILURE TO COMPLY WITH THE TERMS OF THE APPLICABLE NPDES PERMIT BY FAILING TO SELECT, INSTALL, AND MAINTAIN EROSION PREVENTION AND SEDIMENT CONTROLS IN ACCORDANCE WITH GOOD ENGINEERING PRACTICES AND TO PREVENT RILL AND GULLY FORMATION IN VIOLATION OF THE CLEAN WATER ACT

68.     Paragraphs 1-67 of this Complaint are hereby realleged and incorporated by reference herein.

69.     TNCGP §   3.5.3.1(b) (Expired TNCGP § IV.D.2.a.i.(b)) provides that "[a]ll control measures must be properly selected, installed, and maintained in accordance with the manufacturer's specifications (where applicable) and good engineering practices. All control measures selected must be able to slow runoff so that rill and gully formation is prevented."

– 15 –

70. Defendant has violated TNCGP § 3.5.3.1(b) (Expired TNCGP § IV.D.2.a.i.(b)) and the Act by failing to properly select, install, and maintain erosion prevention controls, as evidenced by the discharge of highly turbid stormwater during even routine rain events and by the formation of rills and gullies throughout the Casa Bella Subdivision construction site. As a result, significant amounts of sediment have been mobilized and discharged from the Casa Bella Subdivision. As described in the Notice Letter served by Plaintiffs and attached hereto as Exhibit 1, and incorporated by reference herein, this is a continuous violation that began upon commencement of construction. The Notice Letter also lists specific dates when Plaintiffs have documented violations of this provision. Violation of this provision is continuing and is likely to recur.

71. As a result of the acts and omissions of Defendant, Defendant has violated Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, as well as the Tennessee statutes and rules implementing the Act by repeatedly violating the terms of the TNCGP and of the Expired TNCGP.

## COUNT SIX: FAILURE TO REMOVE FUGITIVE SEDIMENTS IN VIOLATION OF THE CLEAN WATER ACT

72. Paragraphs 1-71 of this Complaint are hereby realleged and incorporated by reference herein.

73. TNCGP § 3.5.3.1(d) (Expired TNCGP § IV.D.2.a.i.(c)) requires requires fugitive sediments that have escaped construction areas, including those that have collected in a street, to be removed "at a frequency sufficient to minimize offsite impacts."

74. TCWN has observed dirt from Casa Bella construction sites on the paved streets in the subdivision that has not been removed in a timely manner and that was likely later washed into storm sewers and streams.

– 16 –

75. Defendant has violated TNCGP § 3.5.3.1(d) (Expired Permit § IV.D.2.a.i.(c)) and the Act by failing to remove fugitive sediments on numerous occasions, including, but not limited to, those listed in the Notice Letter served by Plaintiffs and attached hereto as Exhibit 1, and incorporated by reference herein. Violations of this provision are continuing and are likely to recur.

76. As a result of the acts and omissions of Defendants, Defendant has violated Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, as well as the Tennessee statutes and rules implementing the Act by repeatedly violating the terms of the TNCGP and of the Expired TNCGP.

## COUNT SEVEN: FAILURE TO COMPLY WITH THE TERMS OF THE APPLICABLE NPDES PERMIT BY FAILING TO TEMPORARILY STABILIZE INACTIVE AREAS WITHIN FIFTEEN DAYS IN VIOLATION OF THE CLEAN WATER ACT

77. Paragraphs 1-76 of this Complaint are hereby realleged and incorporated by reference herein.

78. TNCGP § 3.5.3.2 of the TNCGP (Expired TNCGP § IV.D.A.ii.a) provides that "temporary or permanent soil stabilization at the construction site (or a phase of the project) must be completed not later than 15 days after the construction activity in that portion of the site has temporarily or permanently ceased."

79. Defendant has violated TNCGP § 3.5.3.2 (Expired TNCGP § IV.D.A.ii.a) and the Act by failing to stabilize areas of the Casa Bella Subdivision that have not been worked for at least fifteen days. Defendant has violated this requirement on several occasions, including, but not limited to, those listed in the Notice Letter served by Plaintiffs and attached hereto as Exhibit 1, and incorporated by reference herein. Violations of this provision are continuing and are likely to recur.

80. As a result of the acts and omissions of Defendants, Defendant has violated Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, as well as the Tennessee statutes and rules implementing the Act by repeatedly violating the terms of the TNCGP and of the Expired TNCGP.

## COUNT EIGHT: FAILURE TO COMPLY WITH THE APPLICABLE NPDES PERMIT REQUIREMENTS BY FAILING TO PREPARE AND UPDATE THE SWPPPS IN VIOLATION OF THE CLEAN WATER ACT

81. Paragraphs 1-80 of this Complaint are hereby realleged and incorporated by reference herein.

82. TNCGP § 3.4.1 (Expired TNCGP § IV.C) requires dischargers to update their SWPPP when there is a "change in the scope of the project," when the "SWPPP is proving ineffective in eliminating or significantly minimizing pollutants." Based on TCWN's review of TDEC and Knox County files, the December 2003 SWPPP has not been updated to address the changed conditions that have occurred on the site, including new operators and the failure of the EPSCs in the SWPPPs to prevent the discharge of sediment-laden waters from the construction site.

83. The SWPPP does not address measures to control post-construction stormwater discharges in violation of TNCGP § 3.5.4 (Expired TNCGP § IV.D.2.b). There is no discussion in the SWPPPs of whether velocity dissipation devices will be used to control and reduce the flow rate of stormwater on and from the site to acceptable levels as described in the permit.

84. The SWPPP does not include a description of construction and waste materials to be stored on the site in violation of TNCGP § 3.5.5(d) (Expired TNCGP § IV.D.2.c.iv). Such a list might include, in addition to soil, specific paints and sundry painting supplies; building materials including but not limited to, woods, nails, form oils, roofing materials, and exterior

products; plumbing supplies including solvents, glues, metals (i.e. copper, brass, steel, galvanized), plastics, PVC materials, solder and similar products; landscaping materials such as mulch, plants, trees, shrubs, soils and associated materials; as well as other materials that might be stored in such a manner as to come in contact with stormwater as it falls or moves across the ground. Any of these materials may potentially cause pollutants to be released in stormwater discharges from the site. The SWPPP does not describe the controls that will be used to reduce these pollutants from the stormwater discharges from the site.

85. The SWPPP does not describe procedures that ensure that vegetation, erosion and sediment control measures, buffer zones, and other protective measures identified in the plan are kept in good working and effective operating condition in violation of TNCGP § 3.5.7 (Expired TNCGP § IV.D.3). Instead, there is only a bare statement that an unidentified contractor "shall comply with the best management practices as mentioned in the Erosion & Sediment Control Handbook for the State of Tennessee" without any description of how this statement will be implemented.

86. As described in the Notice Letter served by Plaintiffs and attached hereto as Exhibit 1, and incorporated by reference herein, these SWPPP violations are continuous, and began upon commencement of construction. Violations of the TNCGP §§ 3.4.1, 3.5.4, 3.5.5(d), and 3.5.7 (Expired TNCGP §§ IV.C, IV.D.2.b, IV.D.2.c.iv, and IV.D.3) are continuing and are likely to recur.

87. As a result of the acts and omissions of Defendant, Defendant has violated Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, as well as the Tennessee statutes and rules implementing the Act by repeatedly violating the terms of the TNCGP and of the Expired TNCGP.

- 19 -

## COUNT NINE: FAILURE TO COMPLY WITH THE TERMS OF THE APPLICABLE NPDES PERMIT SELF-INSPECTION REQUIREMENTS IN VIOLATION OF THE CLEAN WATER ACT

88.     Paragraphs 1-87 of this Complaint are hereby realleged and incorporated by reference herein.

89.     TNCGP § 3.5.8 imposes several self-inspection requirements that are designed to operate together to ensure that any sediment control problems, including discharges, are identified and addressed.

90.     The only self-inspection reports for Casa Bella available in the TDEC files were submitted on October 15, 2004 and July 15, 2005. The October 15, 2004 report was signed by David Trantanella and Jerry Beeler of Trantanella Construction. The July 15, 2005 report was signed by Tina Crawford and Jerry Beeler of Trantanella Construction.

91.     TNCGP § 3.5.8.1 requires that all inspections be done by an inspector who has completed TDEC's "Fundamentals of Erosion Prevention and Sediment Control" course effective June 17, 2007.     As of December 3, 2009, neither David Trantanella, Jerry Beeler, Tina Crawford, nor David Smith (Trantanella Construction's recent site representative) are listed on TDEC's website as having a current TDEC certification. Any inspections done by these individuals, or by other unqualified individuals, would constitute a violation this provision for each inspection date.

92.     TNCGP § 3.5.8.2(a) requires that self-inspections inspections be done at least twice per calendar week, at least 72 hours apart. There is no documentation in the TDEC files that these inspections have been done after July 2005. Knox County issued an NOV on June 25, 2008 citing Mr. Trantanella for failing to conduct self-inspections. If these inspections have

$- 20 -$

not been done, it would be a violation of this provision for two days of every week since August 1, 2005.

93.  TNCGP § 3.5.8.2(b) requires qualified personnel to inspect disturbed areas of the site, areas used for materials storage that are exposed to rain, structural control measures, construction entrances, and outfalls. Section IV.D.4.c of the Expired Permit imposed similar requirements. Based on contradictions between the self-inspection reports submitted to TDEC and TDEC and TCWN's observations, Defendant has violated this provision on at least those dates listed in the Notice Letter.

94.  TNCGP § 3.5.8.2(c) requires qualified inspectors to observe "[d]isturbed areas and areas used for storage of materials that are exposed to precipitation…for evidence of, or potential for, pollutants entering the drainage system" as well as "[e]rosion prevention and sediment control measures identified in the SWPPP…to ensure that they are operating correctly." Section IV.D.4.d of the Expired Permit imposed similar requirements. Based on contradictions between the self-inspection reports submitted to TDEC and TDEC and TCWN's observations, Defendant has violated this provision on at least those dates listed in the Notice Letter.

95.  TNCGP § 3.5.8.2(d) requires inspections at outfall points to determine whether EPSCs are effective in preventing significant impacts to receiving waters. Section IV.D.4.e of the Expired Permit imposed similar requirements. Based on contradictions between the self-inspection reports submitted to TDEC and TDEC and TCWN's observations, Defendant has violated this provision on at least those dates listed in the Notice Letter.

96.  All violations of TNCGP § 3.5.8 are ongoing, continuing, and likely to recur.

- 21 -

97.     As a result of the acts and omissions of Defendants, Defendant has violated Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, as well as the Tennessee statutes and rules implementing the Act by repeatedly violating the terms of the TNCGP and of the Expired TNCGP.

## COUNT TEN: FAILURE TO COMPLY WITH THE TERMS OF THE APPLICABLE NPDES PERMIT BY FAILING TO ENSURE THAT ALL OPERATORS HAVE PERMIT COVERAGE AND ARE COMPLYING WITH THE SWPPP IN VIOLATION OF THE CLEAN WATER ACT

98.     Paragraphs 1-98 of this Complaint are hereby realleged and incorporated by reference herein.

99.     Section 2.3.1(e) of the TNCGP requires permittees with design control to ensure that new operators at the site obtain coverage under the TNCGP and that they comply with the SWPPP.

100.    Defendant has sold some of the lots in the Casa Bella subdivision, including some that were not built-out at the time of sale. Mr. Trantanella has failed both to ensure that the buyers of his lots obtain permit coverage and that they comply with the SWPPP in violation of TNCGP § 2.3.1(e).

101.    Defendant has violated this requirement on numerous occasions, including, but not limited to, those listed in the Notice Letter served by Plaintiffs and attached hereto as Exhibit 1, and incorporated by reference herein. Violations of this provision are continuing and are likely to recur.

102.    As a result of the acts and omissions of Defendant, Defendant has violated Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, as well as the Tennessee statutes and rules implementing the Act by repeatedly violating the terms of the TNCGP.

## RELIEF REQUESTED

- 22 -

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

a.   Declare that the Defendant has violated and continue to violate the Clean Water Act;

b.   Enjoin Defendant from continuing with land disturbance and/or construction activity at the Casa Bella Subdivision in such a manner as will result in further violations of Defendant's NPDES Permit for the site;

c.   Order Defendant to comply with all terms and conditions of the TNCGP;

d.   Enjoin Defendant from any further discharge of sediment or other pollutants into Murphy Creek and its tributaries.

e.   Order Defendant to pay civil penalties of up to Thirty-Seven Thousand Five Hundred dollars ($37,500) per day for violations after January 12, 2009 and of up to Thirty-Two Thousand Five Hundred dollars ($32,500) per day for violations from December 14, 2004 to January 12, 2009, for each day of each violation of Defendant's NPDES permit, pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a), and 40 C.F.R. § 19.4, including those days listed in this Complaint and the Notice Letter and any violations committed subsequent to those listed in this Complaint and Notice Letter or discovered during the course of this litigation;

f.   Order the Defendant to take such steps as are necessary and proper to remedy the harm caused by his violations of the Clean Water Act;

g.   Award Plaintiff its costs (including reasonable attorney and expert witness fees) as authorized by Section 505(d) of the Act, 33 U.S.C. § 1365(d);

h.   Award such other relief as the Court deems just and appropriate.

- 23 -

Respectfully submitted on this, the 14th day of December, 2009.

Stephanie D. Matheny (BPR#027785)
Tennessee Clean Water Network
P.O. Box 1521
Knoxville, TN 37901
Telephone: (865)522-7007 x 102
stephanie@tcwn.org